W. DAVIS *v.* THE STATE.

1. RAILWAYS — STOPPAGE AT STATIONS. — The gist of the offence created by the act of 1866, "to regulate the time that railroad passenger-cars shall stop at way-stations," is not the stoppage of such a train less than five minutes, but the passing of a way-side station without stopping at least five minutes thereat.

2. SAME. — INDICTMENT against a conductor charged that he "did then and there wilfully and unlawfully stop a train of passenger-cars less than five minutes" at a certain way-side station. *Held,* that the indictment fails to charge any offence.

3. SAME. — Indictments based on said act of 1866 must aver that the defendant, whether a "conductor or other person," was *in charge* of the train.

APPEAL from the County Court of Guadalupe.    Tried below before the Hon. H. MANEY, County Judge.

Appellant's exceptions to the indictment being overruled, he waived a jury, and pleaded guilty; whereupon the court adjudged him to pay a fine of $50.

Appellant's assignment of errors, as well as his brief, impeaches the constitutionality of the statute in question; as to which see *Davidson* v. *The State,* 4 Texas Ct. App. 545.

*E. P. Hill,* for the appellant.    Appellant was a conductor in charge of a passenger-train on the Galveston, Harrisburg, and San Antonio Railway, and this was a pro-

ceeding against him as such, under art. 6532 of Paschal's Digest.

An examination of the statutes of the States, as far as accessible, and of the digests of decisions of the courts of all the States, fails to discover any trace of a statute elsewhere, fixing the time that trains shall stop at stations. In view of the long existence of these institutions in older States, and the statutes enacted for their regulation in almost every conceivable particular, the fact that no attempt has been made to exercise such a power would seem to argue strongly against belief in its existence.

The only case I find similar in principle is the case of *The State* v. *Noyes,* 47 Me. 189. An act was passed, providing that when railroads crossed each other, and passenger-trains were due at the crossing at the same hour, it should be the duty of the trains to wait twenty minutes for each other; and providing a fine against the conductor, etc. The case involved the constitutionality of that statute, and it was held, in an able opinion, unconstitutional and void. Other points arose in the case, but the opinion decides the case principally on the ground that the police power of the State extends to regulations looking to public safety, and not to public *convenience.* The principle is stated, and the case cited approvingly, by both Cooley and Sedgwick, in their works on Constitutional Law.

If the power exist at all, it is referable only to the police power of the State, and the maxim *Sic utere tuo ut alienum non lædas* lies at the foundation of that power. If the Legislature can require a stop of five minutes, it is difficult to define any limit to its power in that direction.

Statutes requiring the bell rung or whistle blown at crossings, to put up signs, to run slow through the streets of towns, and similar acts, are all clearly in the interest of the public *safety,* because, in the nature of things, such or similar precautions must be used without statutes requiring them. But no such consideration is suggested with respect

to this statute.   It was evidently prompted by the purpose of compelling trains to wait upon the *convenience* of the public.

To require a train to stop five minutes, when one minute, or less, would be sufficient to do the business offering, is a deprivation of liberty to that extent.  Five minutes is a short time, abstractly considered, but it is a long time for a train to stop at a station.  " Time is money," is an old aphorism.  Count thirty stations from Houston to San Antonio, and an average of one minute a sufficient stop at each, and if the statute is enforced, there is a downright robbery of two hours upon every trip, not alone upon the railway company, but every passenger ; two hours of absolute restraint upon the liberty of the corporation to exercise its corporate franchise in running its trains, and upon its right to consult and provide for its own interests, consistently with the recognized rights of others, in the management of its road, as a common incident to the right of property.

The statute is meddlesome and impractical, and, upon principle and authority, is unconstitutional and void.

*Thomas Ball*, Assistant Attorney-General, and *W. B. Dunham*, for the State.

Winkler, J.   This appeal is from a conviction under art. 6532 of Paschal's Digest, for an alleged violation of the act which requires conductors, and other persons in charge of passenger-trains, to stop at wayside stations.   The following is the language of the act which creates the offence :  " Any such conductor, or other person in charge of such passenger-train, who shall, upon any occasion, pass any such station without stopping his train as aforesaid, shall be deemed guilty of a misdemeanor."   The offence created by the statute consists in a conductor, or other person in charge of a passenger-train, passing a wayside

station without stopping at such way-side station not less than five minutes.

The indictment under consideration, besides formal averments, and such other allegations as are proper as to the establishment of a way-side station, and having a proper conclusion, charges that the accused "did then and there wilfully and unlawfully stop a train of passenger-cars less than five minutes at Kingsbury, and that he, the said William Davis, was then and there conductor of said train of passenger-cars." The gist of the offence is not in stopping a train less than five minutes, but in passing a way-side station without stopping the length of time required. In this respect the indictment does not properly describe the offence the law intends to punish.

The indictment is defective in another particular, to wit, it does not aver that the defendant was in charge of the train.

The indictment, for these reasons, is defective and insufficient, and does not charge any offence against the law; and, therefore, this judgment must be reversed and the prosecution dismissed.

*Reversed and dismissed.*